961 F.2d 1565
 NOTICE: First Circuit Local Rule 36.2(b)6 states unpublished opinions may be cited only in related cases.
Paul SIMMONS, Plaintiff, Appellant,
v.
Paul G. DICKHAUT, et al., Defendants, Appellees.
 No. 91-2336.
 United States Court of Appeals,
First Circuit.
 May 20, 1992
 
 Paul Simmons on brief pro se.
 Scott Harshbarger, Attorney General, and Andrea J. Cabral, Assistant Attorney General, on brief for appellees.
 Before Breyer, Chief Judge, Selya and Cyr, Circuit Judges.
 Per Curiam.
 
 
 1
 The appellant, Paul Simmons, appeals the grant of summary judgment in defendants' favor and the dismissal of his complaint, filed pursuant to 42 U.S.C. § 1983. We affirm.
 
 
 2
 In 1986, we reversed the district court's dismissal of appellant's complaint for failure to state a claim. Simmons v. Dickhaut, 804 F.2d 182 (1st Cir. 1986). We concluded that an allegation of intentional violation of the right of access to the courts states a cause of action under § 1983 and that appellant had alleged facts adequate to show more than simply a procedural due process/deprivation of property claim, but rather an intentional deprivation of his right of access to the courts, protected as a substantive, constitutional right. Id. at 185. While we directed that his complaint be reinstated, we cautioned appellant that, on remand, he still had to
 
 
 3
 fill[ ]in the particulars of his claim to withstand a motion for summary judgment. We intimate no opinion about the success on the merits of Simmons's allegations.
 
 
 4
 Id.
 
 
 5
 On remand, appellant sought to "fill[ ] in the particulars of his claim" by attempting to show the injury which he claimed resulted from the defendants' intentional deprivation of his right of access to the courts. Appellant claimed that, had he had his legal material, (1) he would have been able to substantiate his claim of an involuntary guilty plea to a 1981 charge of armed robbery; (2) the state court would have revoked his sentence on the guilty plea; and (3) an indictment on a different charge, which later was brought forward and pursuant to which appellant received an additional 18-20 years, would have been dismissed.
 
 
 6
 The district court did not address any aspect of appellant's alleged injury. Rather, it concluded that appellant's claim suffered from a failure of proof on an antecedent element of his claim and granted defendants' motion for summary judgment.
 
 
 7
 As we have recited countless times, we review the grant of summary judgment de novo. E.g., Rodriques v. Furtado, 950 F.2d 805, 808 (1st Cir. 1991). The question we face is whether there is "any genuine factual issue[ ] that properly can be resolved only by a finder of fact because [it] may reasonably be resolved in favor of either party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986). In order to establish liability under § 1983, appellant has to show an intentional deprivation of his right of access to the courts and that defendants' conduct was causally connected to that deprivation. Gutierrez-Rodriguez v. Cartagena, 882 F.2d 553, 559 (1st Cir. 1989).
 
 
 8
 The record essentially reduces to these competing contentions.
 
 
 9
 Appellant claims: I had personal property, including legal material, in my possession. I left it. The defendants took possession of my property. Despite prison regulations which require the defendants to forward my property to me, I had to ask three times for my legal material. When I got my property back, I was told the legal material was not there.
 
 
 10
 The defendants respond: Appellant lived in an unlocked dormitory, where other inmates had access to his personal property. He never requested that any legal material be separately inventoried or stored in a secure location. The property officer, who took possession of appellant's property after appellant's escape, including a box of miscellaneous books and papers, never removed or tampered with anything in that box while it was in his custody. And, to the best of the property officer's knowledge and belief, no one removed or tampered with anything in that box from the time it was taken from appellant's room until it was retrieved by the person authorized by appellant to do so.
 
 
 11
 Appellant claims that he had legal material among his possessions. In any event, defendants do not deny that he had legal material; rather, they are saying that they do not know whether he did or not. Appellant apparently has no personal knowledge that his legal material is, in fact, missing. His filings have always recited that he "was told" that his legal material was not among his personal property that was picked up by Robert Lockett. Accepting the premise that appellant had legal material among his personal property and that it was not there when the property was retrieved, the inference he then asks that we draw is that defendants (a) confiscated it (b) with the intent to interfere with (or were either reckless or callously indifferent about, see Germany v. Vance, 868 F.2d 9, 18 (1st Cir. 1989)) his right of access to the courts.
 
 
 12
 The Court has stated that there is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted.
 
 
 13
 Anderson v. Liberty Lobby, Inc., 477 U.S. at 249-50 (internal citations omitted).
 
 
 14
 The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff. The judge's inquiry, therefore, unavoidably asks whether reasonable jurors could find by a preponderance of the evidence that the plaintiff is entitled to a verdict....
 
 
 15
 Id. at 252.
 
 
 16
 "On issues where the nonmovant bears the ultimate burden of proof, he must present definite, competent evidence to rebut the motion." Mesnick v. General Elec. Co., 950 F.2d 816, 822 (1st Cir. 1991), petition for cert. filed, 60 U.S.L.W. 3689 (U.S. Mar. 9, 1992) (No. 91-1528). "The evidence illustrating the factual controversy cannot be conjectural or problematic." Mack v. Great Atl. & Pac. Tea Co., 871 F.2d 179, 181 (1st Cir. 1989). Appellant's "evidence" that defendants confiscated his legal material is no more than "merely colorable" or "a scintilla of evidence," and is not enough to support a jury finding in appellant's favor by a preponderance of the evidence. The district court correctly concluded that the factfinder would be left to conjecture or speculation.
 
 
 17
 Contrary to appellant's apparent belief, our reversal of the district court's prior dismissal for failure to state a claim did not relieve him, on remand, from the burden of providing sufficient factual support of a causal connection between defendants' conduct and the alleged intentional deprivation of his right of access to the courts. While we concluded that the district court had erred, in 1986, in construing appellant's complaint as alleging no more than a negligent deprivation of property, allegations which suffice to survive a dismissal, pursuant to Fed. R. Civ. P. 12(b)(6), are not necessarily sufficient to survive the summary judgment hurdle. See Ochoa Realty Corp. v. Faria, 815 F.2d 812, 814 n.1 (1st Cir. 1987).
 
 
 18
 Finally, we add that there are some obvious gaps and leaps of faith in appellant's reasoning in support of his claim of injury. Apart from this concern, appellant's allegation of injury is problematical. At a December 1985 state court hearing on his postconviction motion, it was learned that the court reporter had lost her stenographic notes of appellant's 1981 guilty plea proceeding, so no transcript of that plea proceeding existed. If, as appellant suggests, his request for postconviction relief, alleging an involuntary guilty plea, was dismissed by the state court for failure of proof, it likely was because appellant could not substantiate his claim of an involuntary plea without a transcript of the 1981 plea proceeding. That dismissal, therefore, did not result from any confiscation of legal material by defendants, who could not have confiscated a transcript which did not exist.
 
 
 19
 A generous reading of some of appellant's filings suggests that appellant also may have claimed that he had legal material, such as copies of state court postconviction motions and supporting memoranda, among the legal material allegedly confiscated. At the hearing on his motion seeking to vacate his guilty plea (where appellant was represented by counsel), the judge acknowledged that he had received "a lot of papers directly from Mr. Simmons" and he would "reread the papers that I have which I got directly from your client and take into consideration what you have pointed out in your arguments." Assuming that legal material, related to appellant's attempts to vacate his 1981 guilty plea, was among the "miscellaneous books and papers" in defendants' possession after July 1985, it appears likely that the judge had that material in any event and unlikely that the dismissal of his state court postconviction proceeding resulted from appellant's inability to produce copies of that material.
 
 
 20
 Whether a plaintiff, who alleges a denial of his right of access to the courts, must plead and prove the existence of an actual injury depends upon the extent of the deprivation. Sowell v. Vose, 941 F.2d 32, 34-35 (1st Cir. 1991). "A prisoner need not show that the deprivation caused him an independent injury where the deprivation is so significant as to constitute an injury in and of itself." Id. at 34. "Missing documents do, in a sense, constitute an 'absolute' deprivation." Id. at 35. Even assuming that appellant was not required to show an actual injury, he, nevertheless, has to show a causal connection between the defendants' conduct and the deprivation of the right of access to the courts. Appellant's evidence of injury cast doubt, not only on the existence of injury, but on the existence of a deprivation, as well. While the defendants' conduct may have deprived appellant of his legal material, that conduct does not appear to have deprived him, in any meaningful way, of his access to the courts. On this record, any confiscation of legal material, if it occurred, did not adversely impact on his ability to participate in any court proceeding in which he was involved. No constitutional deprivation occurred.
 
 
 21
 Affirmed.